UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

INDUSTRIAL TECHNOLOGY VENTURES, L.P.,

Plaintiff,

v.

PLEASANT T. ROWLAND REVOCABLE TRUST, et al.,

Defendants.

---

DECISION & ORDER

08-CV-6227CJS

## PRELIMINARY STATEMENT

Plaintiff Industrial Technology Ventures, L.P. ("ITV") has sued two trusts – the Pleasant T. Rowland Revocable Trust and the W. Jerome Frautschi Living Trust – and two individuals – W. Jerome Frautschi and Diane Creel – asserting, *inter alia*, claims for breach of fiduciary duty, securities fraud and tortious interference with business relationships. (Docket # 4). Currently pending before this Court are ITV's motion to amend its complaint and a subsequent motion to substitute the proposed amended complaint it seeks to file. (Docket ## 62, 84). For the reasons discussed below, ITV's motions are granted.

## FACTUAL BACKGROUND

### I. Procedural History

This action was filed on May 27, 2008. (Docket # 1). ITV filed an amended complaint on September 5, 2008 (the "First Amended Complaint"), which defendants unsuccessfully sought to dismiss. (Docket ## 4, 5, 35). The initial scheduling order set July 1,

2010 as the deadline for amending the pleadings. (Docket # 46). Although various deadlines in the original scheduling order were thereafter extended, that deadline was not. (Docket # 61).

On February 18, 2011, ITV forwarded to defendants a red-lined proposed amended complaint and requested that defendants agree to the amendments. (Docket # 62-1 at 2). The proposed amendments included only new and revised factual allegations; it did not include any proposed new claims or defendants. Defendants did not respond to ITV's request, but deposed ITV's representatives after the draft was circulated and during those depositions apparently inquired about allegations in the proposed draft. (Docket # 76 at 9). On May 13, 2011, ITV again requested defendants' agreement to their proposed amended complaint. (Docket # 62-1 at 2). Only defendant Creel responded, and she opposed the request. (*Id.*).

ITV filed the instant motion on June 2, 2011. (Docket # 62). The proposed amended complaint attached to that motion was not the same draft that had been circulated in February 2011. Instead, it included additional factual allegations based on discovery conducted between February and May. (Docket # 62-1 at 2 n.2). Defendants objected to ITV's motion because it differed from the February proposal and argued that ITV had not demonstrated good cause to amend the complaint following the expiration of the deadline in the scheduling order. Defendants also opposed the motion on the ground of futility, arguing that the fraud allegations were not pled with sufficient particularity under Fed. R. Civ. P. 9(b) and that some of the proposed amendments lacked evidentiary support. (Docket # 68).

On August 9, 2011, this Court held a status conference with the parties. (Docket # 82). At the conference, this Court addressed the fact that ITV's motion to amend sought permission to file a proposed amended complaint that differed from the copy that it had

circulated to defendants in February 2011. The Court also urged ITV to review its claims of securities fraud to ensure that they were pled with adequate particularity.

On August 22, 2011, ITV filed the instant motion to substitute its proposed amended complaint. (Docket # 84). The August version of the complaint abandons many of the allegations that were new in the June version and amends only that portion of the February version pertaining to ITV's fraud claims in order to address the Court's comments about the particularity of those allegations. (*Id.*). Again, no new claims or defendants have been included. Defendants continue to oppose the motion to amend on the grounds that ITV has not demonstrated good cause for the amendments and that ITV's allegations lack evidentiary support.[1] (Docket # 88).

## II. <u>The Proposed Amendments</u>

According to the First Amended Complaint, ITV was an investor in Ecovation, an environmental technology company that built and operated wastewater treatment plants. (Docket # 4 at ¶ 2). Defendant Diane Creel ("Creel") became Ecovation's CEO in 2003. (*Id*. at ¶ 21). The Pleasant T. Rowland Revocable Trust and the W. Jerome Frautschi Living Trust (together, the "Trusts") were also substantial investors in Ecovation and had provided the company with an approximately $30 million dollar line of credit. (*Id*. at ¶¶ 20, 25). Defendant W. Jerome Frautschi ("Frautschi") was a representative of the Trusts and also a member of Ecovation's Board of Directors. (*Id*. at ¶ 23).

---

[1] Defendants have also moved for sanctions under Federal Rule of Procedure 11 alleging, *inter alia*, that ITV's counsel has knowingly made claims that have no factual basis. (Docket # 96). That motion was argued before United States District Judge Charles J. Siragusa on February 16, 2012, and is pending decision. (Docket # 100).

**A. <u>The Securities Fraud Allegations</u>**

According to ITV, defendants unlawfully schemed "to take advantage and control of [Ecovation] when [it] was in need of capital." (*Id*. at ¶ 3). ITV asserts that as part of the scheme, defendants deceptively induced ITV into selling two-thirds of its shares in Ecovation to the Trusts at an unreasonably low price by concealing their knowledge of certain material facts and by making material misrepresentations – conduct that constitutes a violation of Section 10(b) of the Securities Exchange Act of 1934. (*Id*. at ¶¶ 3, 85-102).

In the First Amended Complaint, ITV alleged that an Ecovation representative, Dan Hagen ("Hagen"), attended an industry conference in January 2007, at which he had discussions with a representative of another company, Ecolab, who "expressed vigorous interest" in purchasing Ecovation. (Docket # 4 at ¶ 79). The complaint further alleged that Hagen immediately relayed this information to Creel, who, in turn, advised the Trusts. (*Id*. at ¶¶ 80-83). Creel and the Trusts then began secret negotiations to sell Ecovation to Ecolab without disclosing those negotiations to ITV. (*Id*. at ¶¶ 83-84).

According to the First Amended Complaint, ITV alleged that almost immediately after the industry conference, the Trusts began to solicit the purchase of ITV's shares in Ecovation. (*Id*. at ¶ 86). At that time, the Trusts knew that ITV planned to hold its investment in Ecovation for approximately two to three years (*id*. at ¶¶ 87, 93); to induce ITV to sell, Frautschi advised it that the Trusts planned to hold their investments for a longer period of time (*id*. at ¶¶ 93, 94; Ex. 5). According to ITV, Frautschi deliberately concealed Ecovation's "imminent" sale to Ecolab, a fact that would have led ITV to reject the Trusts' offer to buy its shares. (*Id*. at ¶¶ 94-98). In fact, ITV sold a "substantial" number of its Ecovation shares to the Trusts. (*Id*. at

¶¶ 3, 91). Approximately six months later, Ecolab bought Ecovation for $210 million, generating a profit of more than $40 million for the Trusts. (*Id*. at ¶¶ 99-100). According to ITV, it would have received in excess of $9 million as a result of the sale had it retained, rather than sold, its shares. (*Id*. at ¶¶ 98, 102).

In the proposed Second Amended Complaint, ITV seeks to add details regarding a January 2007 telephone conversation between Frautschi and Ed Wilson ("Wilson"), an ITV representative and member of Ecovation's Board of Directors, in which Frautschi allegedly told Wilson that the Trusts intended to keep their Evocation stock for longer than three years. (Docket # 84-2, Exhibit ("Ex.") A at ¶ 111). This is the same representation that Frautschi allegedly made to ITV discussed above.

The proposed amendments also seek to add more detail regarding the alleged meeting between Ecovation and Ecolab representatives at the industry conference in January 2007.[2] First, ITV now alleges that as early as December 2005 Hagen identified Ecolab to Creel as a potential purchaser of Ecovation. (*Id*. at ¶¶ 91-93). In addition, ITV identifies the January 15-17, 2007 conference as hosted by the International Dairy Foods Association ("IDFA") and alleges that Creel, as well as Hagen, attended that conference. (*Id*. at ¶ 96). ITV further describes discussions between Creel, Hagen and Ecolab representatives in which the Ecolab representatives expressed a "strong interest" in purchasing Ecovation and Creel advised that she "could convince the [Ecovation] Board to accept an offer north of $200 million." (*Id*. at ¶ 99). In response, Ecolab confirmed "its ability to meet that price." (*Id*.). In addition, ITV alleges that

[2] ITV has amended this portion of the proposed complaint to address the Rule 9(b) particularity requirements discussed at the August 2011 conference. (Docket # 84).

they also discussed a "significant" joint marketing agreement between Ecolab and Evocation. (*Id*. at ¶ 100). ITV asserts that on January 18, 2007, the day after the conference, Creel flew to Wisconsin and informed the Trusts of "Ecolab's offer to purchase [Ecovation] at an acceptable price range." (*Id*. at ¶ 102). Finally, the proposed amendments assert that ITV was unaware of the communications between Ecovation and Ecolab about either a sale or joint marketing alliance and that it would not have sold its shares to the Trusts if it had it been aware of communications on either subject. (*Id*. at ¶¶ 105, 123).

### B. <u>The Tortious Interference Allegations</u>

In the proposed Second Amended Complaint, ITV also alleges that Creel and the Trusts tortiously interfered with its business relationship with Ecovation by forcing Ecovation's Board of Directors to accept a financing agreement that severely diluted ITV's investments in the company. (*Id*. at ¶¶ 46-65). Specifically, ITV alleges that in June 2006, Creel and the Trusts solicited from ITV a term sheet proposing financing for Ecovation through additional investments because the Trusts' financing was set to expire. (*Id*. at ¶ 49). According to ITV, at the same time, Creel and the Trusts were drafting their own financing proposal that involved an extension of the Trusts' line of credit which would dilute ITV's investment in Ecovation. (*Id*. at ¶¶ 50, 57). ITV alleges that defendants "never intended to give good faith consideration to [ITV's] [t]erm [s]heet" and threatened to foreclose on the Trusts' line of credit to Ecovation if Ecovation's Board of Directors did not unconditionally accept the Trusts' term sheet. (*Id*. at ¶¶ 59-61). Creel threatened to quit as Ecovation's CEO if the Board did not accept the Trusts' term sheet. (*Id*. at ¶ 62). Thus, ITV claims, "[b]y forcing the Board to accept the [Trusts'] Term Sheet, [ITV was] unlawfully prevented from entering into [a] business relationship with

[Ecovation].” (*Id*. at ¶ 174). ITV alleges that the Trusts and Creel engaged in this conduct intentionally and maliciously. (*Id*. at ¶ 177).

## DISCUSSION

Defendants contend that ITV was not diligent in bringing this motion to amend and therefore has not demonstrated good cause for the amendments under Rule 16. In addition, defendants contend that ITV lacks evidentiary support for its allegations and its proposed claims of securities fraud and tortious interference are therefore futile. I turn first to the issue of good cause for the amendments.

### I. Good Cause

When deciding a motion to amend filed after a court-ordered deadline for amending the pleadings, a court must balance the requirements of Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000). Rule 15(a) provides that once the time for amending a pleading as of right has expired, a party may request leave to amend, which “the court should freely give . . . when justice so requires.” Fed. R. Civ. P. 15(a). Generally, under Rule 15, if the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. *See United States ex rel. Maritime Admin. v. Cont’l Ill. Nat’l Bank and Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989). “In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Rule 16(b) directs the court to enter a scheduling order that limits the time to amend the pleadings. Fed. R. Civ. P. 16(b)(1). Moreover, the rule also provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). *See Parker v. Columbia Pictures Indus.*, 204 F.3d at 340.

In *Parker*, the Second Circuit addressed the showing required of a party moving to amend its pleadings after the time set by the court for filing such motions. 204 F.3d at 340. In that case, the court joined several other circuits in holding that "the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings." *Id.* (internal citations omitted) (collecting cases).

According to the Second Circuit, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker*, 204 F.3d at 340. *See Phaneuf v. Tenneco, Inc.*, 938 F. Supp. 112, 115 (N.D.N.Y. 1996) ("[i]n instances where . . . a considerable amount of time has passed between filing the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his or her neglect and delay") (internal quotation marks omitted) (quoting *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d Cir. 1984)). "Good cause," the court reasoned, "depends on the diligence of the moving party."

*Parker*, 204 F.3d at 340. *Accord Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (court's primary consideration in determining whether a movant has established good cause is "whether the moving party can demonstrate diligence"); *Lowry v. Eastman Kodak Co.*, 14 F. App'x 27, 30 (2d Cir. 2001) (same); *Carnrite v. Granada Hosp. Group, Inc.*, 175 F.R.D. 439, 446 (W.D.N.Y. 1997) ("'[g]ood cause' means that scheduling deadlines cannot be met despite a party's diligence").

In determining whether to grant a motion to amend, the court must weigh the good cause shown for the delay against the prejudice to the non-movant that will result from the amendment. *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46-47 (2d Cir. 1983). Considerations of prejudice include whether the new claim would: (1) require significant additional discovery, (2) significantly delay the resolution of the dispute, or (3) prevent the non-moving party from bringing a timely action in another jurisdiction. *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993). "However, the absence of prejudice to a nonmoving party does not alone fulfill the good cause requirement of Rule 16(b)." *Woodworth v. Erie Ins. Co.*, 2009 WL 3671930, *3 (W.D.N.Y. 2009) (citing *Estate of Radcliffe v. Pradera Realty Co.*, 2007 WL 3084977, *1 (S.D.N.Y. 2007)) (emphasis omitted).

ITV maintains that it diligently reviewed the voluminous discovery produced in this case, deposed numerous fact witnesses, including Creel and Hagen, and prepared the proposed amendments to conform the complaint to the evidence ascertained during discovery. (Docket # 62-1 at 5). Although ITV did not file its motion to amend until June 2011, it

circulated a draft of its proposed amendment to defendants in February 2011 before defendants deposed its representatives. (*Id.*).

In opposing this motion, defendants emphasize that despite negotiating a new scheduling order with this Court during a January 2011 status conference, ITV did not disclose its intention to move to amend the complaint or seek an extension of the deadline to do so. (Docket # 68 at 2). Defendants also fault ITV for waiting to file the motion until four months after it first circulated its proposed amendments. (*Id.* at 8). Further, defendants maintain that ITV's failure to include the alleged January 2007 conversation between Wilson and Frautschi in its original complaint should not be excused because ITV was, or should have been, aware of the conversation because Wilson was an ITV representative. (*Id.* at 10).

Finally, defendants contend that ITV should have moved earlier to include the allegation that a joint marketing agreement was discussed at the IDFA conference, noting that such information was contained in an April 2010 affidavit sworn to by Hagen, which defendants provided to ITV. (*Id.* at 11). ITV counters that it was not comfortable that the affidavit alone provided a sufficient factual basis for the assertion; rather, it wanted to depose Hagen and Creel on the subject before determining whether to seek leave to amend. (Docket # 76 at 5-6). Those depositions were completed in January 2011. (*Id.* at 6).

On the record before me, I find that ITV was sufficiently diligent in seeking to amend the complaint, with the exception of the new allegations regarding the telephone call between Frautschi and Wilson – information ITV knew, or should have known, of at the time the initial complaint was filed. *Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003) (no good cause where substance of amendment was known at time of

original answer). Accordingly, ITV's motion to amend the complaint is denied for lack of good cause with respect to that specific allegation.

In contrast, I am satisfied that ITV acted reasonably and with good cause in awaiting the completion of Hagen and Creel's depositions before asserting the new allegations. Once those depositions were completed, ITV promptly circulated to defendants a proposed amended complaint, and they evidently chose not to respond. ITV then filed the instant motion in June 2011, following completion of further depositions and discovery.

I further find that ITV's amendments will not unduly prejudice defendants. Although defendants contend that the amendments would necessitate additional depositions and interrogatories of ITV's representatives, they apparently inquired about ITV's proposed amendments in February 2011 during depositions of ITV's representatives. (Docket # 76 at 9). Accordingly, on this record, I cannot conclude that the amendments would require such substantial additional discovery as to be prejudicial to defendants.[3]

## II. <u>Futility</u>

I turn next to defendants' argument that the proposed amendments are futile. If the amendment proposed by the moving party is futile, "it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (*per curiam*). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d

---

[3] Following service of the Second Amended Complaint, counsel for all parties are directed to confer to determine the scope, if any, of additional discovery on the new allegations. A joint proposed amended scheduling order shall be submitted by counsel no later than seven days following service of the Second Amended Complaint.

243, 258 (2d Cir. 2002) (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). To avoid dismissal, the proposed amended claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

On a motion to dismiss under Rule 12(b)(6), "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d at 237 (quoting *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)). "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration the complaint itself" unless all parties are given a reasonable opportunity to submit extrinsic evidence. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *see also Gross v. Hanover Ins. Co.*, 1991 WL 102401, *1 n.1 (S.D.N.Y. 1991) (declining to consider extrinsic evidence submitted in opposition to plaintiff's motion to amend because motion was not for summary judgment; citing cases).

**A. <u>Securities Fraud Allegations</u>**

Defendants contend that no evidence exists to support ITV's claims that: (1) an acquisition was discussed during the January 2007 IDFA conference; (2) Frautschi was aware of those discussions or discussions related to the possibility of a joint marketing alliance between the two companies; or (3) Frautschi knew that Ecolab would purchase Ecovation at the time that he sought to purchase ITV's shares. (Docket ## 68 at 14-19; 70). ITV maintains that it possesses documentary evidence to support its allegations, some of which it has submitted in

connection with this motion.[4] In addition, defendants' motion for Rule 11 sanctions is currently pending before the district court on the grounds that ITV has acted in bad faith by asserting claims lacking in evidentiary support. (Docket # 96). Considering the pendency of that motion, even if I were otherwise inclined to examine the record to assess the evidentiary support for ITV's claims, to do so now when the same allegations are directly before the district court would be inappropriate.

In addition, this Court has uncovered no authority to support defendants' contention that a court should apply a more searching review of the evidentiary support for a particular allegation on a motion to amend brought at the close, as opposed to the commencement, of discovery. The cases upon which defendants rely stand for the narrower proposition that more particularity is required under Rule 9(b) at the close of discovery than at the commencement of a case. *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987) ("the degree of particularity required [under Rule 9(b)] should be determined in light of such circumstances as whether the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts"); *Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 57 (2d Cir. 1982) ("[t]he policies underlying Rule 9(b) call upon us to require greater precision than is found in this complaint when full discovery has been had in a case"). As discussed below, I find that

---

[4] Although ITV has not provided this Court with direct evidence of Frautschi's knowledge of the IDFA conference discussions or of the pending sale, it has presented circumstantial evidence of his knowledge. Under Rule 9(b), knowledge and intent may be "alleged generally." Fed. R. Civ. P. 9(b). Nevertheless, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent," which may be established by alleging either "(a) facts to show that defendants had both motive and opportunity to commit fraud, or (b) . . . facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006) (internal quotations omitted). I am satisfied that the proposed Second Amended Complaint meets this pleading standard.

ITV's claims are pled with sufficient particularity under that rule, even considering that the discovery deadline has expired.[5]

Under Rule 9(b), a party must aver fraud with "particularity." Fed. R. Civ. P. 9(b). To satisfy this requirement, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, NA*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). A private cause of action under Section 10(b) of the Securities Exchange Act, as ITV seeks to allege here, must adequately plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

Here, I find that ITV has pleaded its Section 10(b) securities fraud claim with sufficient particularity to satisfy the Rule 9(b) standard. Specifically, ITV alleges that at the time the Trusts purchased Ecovation shares from ITV, defendants concealed from it their knowledge that a sale to Ecolab was imminent and that the two companies were also negotiating a joint marketing alliance. In addition, ITV contends that Frautschi intentionally misrepresented to ITV that the Trusts intended to maintain its investment in Ecovation for longer than the two or three years that ITV had intended to hold its investment. ITV alleges that defendants made these

[5] Although at oral argument defendants principally attacked the evidentiary basis for the factual allegations in the complaint, in their motion papers they also challenged whether the allegations are sufficiently particular under Rule 9(b). (*See* Docket ## 68 at 13-19; 70).

omissions and misrepresentations with the fraudulent intent of inducing ITV to sell its shares to the Trusts before the Ecolab acquisition, that ITV relied on those statements and that ITV would not have sold its shares had it known of the facts omitted and concealed by defendants. Finally, ITV contends that it suffered millions of dollars of damages as a result of defendants' fraudulent conduct.

I find that ITV's securities fraud claim is not futile.

**B. Tortious Interference Claim**

Finally, I turn to defendants' contention that one of ITV's two claims of tortious interference is futile. (Docket ## 68 at 19-20; 88 at 2). Judge Siragusa previously denied defendants' motion to dismiss this claim, rejecting their argument that the claim for interference was futile because they were parties to the term sheet with which they supposedly interfered. (Docket # 35 at 21-23).

ITV's newly-amended allegations provide significantly more detail about the events surrounding the negotiation of the term sheet, but do not modify the substance of the claims. (Docket # 84-4 at ¶¶ 45-75). Defendants renew their challenge to ITV's tortious interference claim on two grounds. First, defendants contend that ITV has failed to include in its amended pleading the fact that ITV withdrew its term sheet from the Ecovation's Board of Directors' consideration. Defendants argue that after ITV withdrew the term sheet, a business relationship with Ecovation became impossible; for that reason, defendants maintain that no prospective business relationship existed with which it could have interfered. (Docket # 68 at 19-20). Second, defendants argue the claim for tortious interference is futile because the Trusts were contractually entitled to foreclose on the loan at any time. Thus, defendants contend that

ITV cannot prove that it withdrew the term sheet in duress because defendants were within their contractual rights to threaten foreclosure. (Docket # 88 at 2).

As Judge Siragusa noted in his previous decision, "[u]nder New York law, the elements of a claim for tortious interference with prospective business relations are: (1) business relations with a third party, (2) the defendant's interference with those business relations, (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means, and (4) injury to the business relationship." *Industrial Tech. Ventures LP v. Pleasant T. Rowland Revocable Trust*, 688 F. Supp. 2d 229, 243 (W.D.N.Y. 2010) (quoting *Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 177 (W.D.N.Y. 2003)). *See also Schultz v. N. Am. Ins. Grp.*, 34 F. Supp. 2d 866, 869 (W.D.N.Y. 1999). A party may commit tortious interference through either lawful or unlawful means. *Schultz v. N. Am. Ins. Grp.*, 34 F. Supp. 2d at 869. Where a plaintiff alleges interference through lawful means, however, the plaintiff must show that "the defendant 'acted for the sole purpose of inflicting intentional harm.'" *Id*. (quoting *NBT Bancorp. v. Fleet/Norstar Fin. Grp.*, 215 A.D.2d 990, 990 (N.Y. 3d Dep't 1995)). *See also Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 190-91 (1980).

Upon review of the above-cited authority, I find that ITV has stated a plausible claim for tortious interference. First, Judge Siragusa previously ruled that the claim may proceed. Second, even assuming that defendants were legally and contractually entitled to foreclose under its credit agreement with Ecovation, ITV has claimed that defendants threatened to do so in order to force Ecovation's Board of Directors to accept defendants' term sheet instead of ITV's. Although defendants may have been entitled to foreclose, they were not permitted to

exercise that right "for the sole purpose of inflicting intentional harm." *Shultz*, 34 F. Supp. 2d at 869. Their intent is, of course, a factual issue.

Further, I do not find that ITV's failure to allege that it withdrew the term sheet is fatal to its claim.[6] The essence of ITV's claim is that it was improperly coerced into withdrawing its term sheet by the Trusts' threat of foreclosure if the Board of Directors did not approve defendants' term sheet. These allegations are adequate to support a claim of tortious interference on the ground that defendants threatened to foreclose for the sole and malicious purpose of interfering with ITV's business relationship with Ecovation.

## CONCLUSION

Accordingly, for the reasons stated above, plaintiff's motion to substitute an exhibit **(Docket # 84)** and its motion to amend its complaint **(Docket # 62)** are **GRANTED**, with the exception of paragraph 111 concerning a communication between Frautschi and Wilson. Within seven (7) days of the date of this decision, plaintiff shall serve and file the Second Amended Complaint. Within seven (7) days of service of the Second Amended Complaint, the parties shall submit a joint proposed amended scheduling order.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
February 17, 2012

[6] Although defendants did not raise the fact of the withdrawal in its original motion to dismiss, defendants presumably were, or should have been, aware of that fact at the time of the motion.